UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JB WHITELOW,

            Petitioner,

            v.                            CAUSE NO.: 3:18-CV-198-JD-MGG

WARDEN,

            Respondent.

OPINION AND ORDER

JB Whitelow, a prisoner without a lawyer, filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for murder and

attempted battery and his 89-year sentence by the Lake County Court on August 20,

2001, under cause number 45G03-0810-MR-7. ECF 2.

BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the

state courts are correct. 28 U.S.C. § 2254(e)(1). It is Whitelow's burden to rebut this

presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana

Court of Appeals set forth the facts surrounding Whitelow's offenses as follows:

> In September 2008, an errantly thrown lemon slice mixed with hot
> tempers, [led] to a scuffle and shooting death outside a bar in
> Hammond. Sometime between two and three o'clock in the morning on
> September 21, a bartender threw a slice of lemon to get the attention of a
> male patron, but by mistake hit Darnell Jones (a.k.a. "Dada"). Dada
> became angry, threw a glass, and was escorted out by Rob Moore (a.k.a.
> "House"), one of the bar's security guards. Upon exiting, Dada began to

argue with House and Eric Lowe (a.k.a. "Herc"), another security guard. House and Herc followed Dada to his car, and Dada then swung open his car door, hitting Herc with it. House and Herc decided to detain Dada and call the police, and struggled to pull him from the car.

At this time House heard screaming nearby, saw a woman restraining a man he later identified as Whitelow, heard a gunshot, and then ducked behind a car parked next to Dada's. House then darted toward his own car to retrieve a gun, but en route remembered his gun was not in his car and instead ran back to the bar, where he alerted the other security guards to the shooting and told them to call 911. House then saw Herc begin to chase Whitelow.

Keith Berry (a.k.a. "Butch"), another security guard, also saw Herc chase Whitelow, and saw Whitelow point a gun and shoot Herc in the head. Butch ran up to Whitelow, put him in a headlock, and was lying on the ground holding Whitelow's head and neck while someone else kicked Butch in the head repeatedly and yelled at him to let go of Whitelow. At least one other joined the scuffle and yelled at Butch to let go of Whitelow. Herc died of his injuries.

Rodreon Jones accompanied Dada to the bar that evening and knew Whitelow. After the gunshots and scuffle, of which she personally saw and heard some but not all of what happened, she called Whitelow's cellular phone and asked him why he shot the security guard. He said "I didn't do that. I got blood all over my shirt and my pants," and then hung up. Transcript at 299 (testimony of Jones).

Over a period of months in early 2009, Whitelow described the incident to Brandon Humphrey three or four times. Whitelow told Humphrey that his sister's child's father, Dada, was kicked out of the bar and was being hassled by a security guard, so Whitelow told the security guard to stop. Whitelow told Humphrey that a scuffle between him and the security guard ensued, during which Whitelow pulled out a gun and shot the guard three times. Whitelow told Humphrey he ran from the scene and burned his clothes. Whitelow also told Humphrey that the only witnesses were his sister's child's father and a second security guard, and that "if he got rid of both of them, that that [sic] was [sic] the only people that could convict him in this case." Id. at 1037 (testimony of Humphrey).

Whitelow was arrested, trial ensued, and a mistrial declared. A second trial followed, and the jury found Whitelow guilty of murder of Herc, a felony, not guilty of attempted murder of House, guilty of attempted battery of House as a Class C felony, and not guilty of battery of Butch. Whitelow then stipulated to being an habitual offender, which was attached to his murder conviction. The trial court held a sentencing hearing, and sentenced Whitelow to consecutive

2

> sentences of fifty-five years for murder, four years for attempted battery, and thirty years for being an habitual offender, for a total of eighty-nine years in prison.

*Whitelow v. State*, No. 45A05-1009-CR-586, 952 N.E.2d 883 (Ind. Ct. App. Aug. 15, 2011) (table), *trans. denied* 962 N.E.2d 649 (Ind. Oct. 13, 2011) (table); ECF 10-5; ECF 10-7 at 18.

After his conviction, Whitelow appealed, arguing that the trial court erred when it admitted certain evidence at trial and that there was insufficient evidence to support the conviction of attempted battery. ECF 10-3 at 4-5; ECF 10-5 at 2. The Indiana Court of Appeals affirmed Whitelow's conviction and sentence. ECF 10-5 at 9. Whitelow sought transfer to the Indiana Supreme Court, but his petition for transfer was denied. ECF 10-6; ECF 10-7 at 18.

On June 1, 2012, Whitelow filed a petition for post-conviction relief in State court. ECF 10-1 at 11. After a hearing, the court denied Whitelow's request for post-conviction relief. *Id.* at 10. Whitelow appealed, arguing that he was denied the effective assistance of trial counsel. *Whitelow v. State*, 95 N.E.3d 212 (Ind. Ct. App. Dec. 19, 2017) (table), *trans. denied* 96 N.E.3d 578 (Ind. Feb. 21, 2018) (table); ECF 10-11. Whitelow argued that the post-conviction relief court erred when it found that his trial counsel was not ineffective where counsel: (1) failed to object to forensic scientist testimony and the admission of an unduly suggestive photo array; (2) failed to object to the prosecution's presentation of false evidence; (3) failed to impeach witnesses; (4) failed to move for a change of venue; (5) failed to hire investigators and experts; (6) failed to properly advise him regarding pleading guilty to the habitual offender enhancement; and (7) committed

cumulative errors that prejudiced him. ECF 10-9 at 2-4. Whitelow also argued that the post-conviction relief court erred when it found that his appellate counsel was not ineffective where counsel did not to challenge the appropriateness of his sentence on appeal. *Id.* at 4. The Court of Appeals upheld the post-conviction relief court's judgment. *Whitelow v. State*, 95 N.E.3d 212 (Ind. Ct. App. Dec. 19, 2017) (table), *trans. denied* 96 N.E.3d 578 (Ind. Feb. 21, 2018) (table); ECF 10-12.

Whitelow sought transfer to the Indiana Supreme Court, raising only the issue of whether his trial counsel was ineffective in failing to: (1) object to the forensic scientist testimony; (2) object to the presentation of false testimony; and (3) impeach witnesses. ECF 10-12 at 3. The Indiana Supreme Court denied transfer. ECF 10-7 at 18; ECF 10-8 at 6.

On March 20, 2018, Whitelow submitted this federal habeas petition challenging his convictions and sentence, arguing that his trial counsel was ineffective for failing to: (1) object to the testimony of Forensic Scientist Rebecca Tobey; (2) move for a mistrial or otherwise challenge the prosecution's admission of false and perjured testimony from Keith Berry, Rodreon Jones, Roberto Martinez, and Brandon Humphrey; and (3) impeach Keith Berry, Rodreon Jones, Roberto Martinez, and Brandon Humphrey. ECF 2 at 5-17. Respondent filed a response to the petition. ECF 10. Whitelow did not file a traverse. The petition is now ripe for adjudication.

4

<u>DISCUSSION</u>

<u>Procedural Default</u>

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Respondent argues that one of the grounds raised by Whitelow is barred from review in federal court due to procedural default. "There are two distinct ways in which a state prisoner can procedurally default a federal claim." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). The first occurs in "cases where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements." *Id.* When a state procedural requirement has not been met, "the state court judgment rests on an independent and adequate state ground and principles of comity and federalism dictate against upending the state-court conviction." *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)).

The second type of procedural default "stems from the requirement that a state prisoner must exhaust his remedies in state court before seeking relief in federal court," which requires that the petitioner include his claims in "one complete round of the State's established appellate review process." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). This means "the petitioner must raise the issue at each and every level in the state court system." *Lewis*, 390 F.3d at 1025. A petitioner "who has exhausted his state court remedies without properly asserting his federal claim at each level of state review has procedurally defaulted that claim." *Id.* at 1026.

One of the grounds that Whitelow has raised in his habeas petition is that trial counsel was ineffective in failing to challenge the testimony of Forensic Scientist Rebecca Tobey. Whitelow alleges both that Tobey used the wrong testing procedure and that her testimony violated Indiana Rule of Evidence 702(b). Whitelow did not argue that Tobey's testimony violated Indiana Rule of Evidence 702(b) on direct appeal. ECF 10-5 at 2. He also did not raise this argument in his post-conviction relief petition, although he did raise it in the appeal of his post-conviction relief petition. ECF 10-11. But, the Court of Appeals declined to consider the argument because Whitelow waived it by not presenting it to the trial court. *Id.* The court noted that "[t]he failure to raise an alleged error in the petition waives the right to raise that issue on appeal" and found that his "argument regarding Evidence Rule 702 is waived." ECF 10-11 at 9 n.1. Thus, the Court of Appeals disposed of Whitelow's argument on an independent state law ground, and this court is barred from reviewing the merits of this argument unless Whitelow's procedural default can be overcome.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental

miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Whitelow did not file a traverse, and he has not presented any basis for excusing his procedural default on this claim. Accordingly, to the extent that Whitelow argues that his trial counsel was ineffective by not seeking to exclude Tobey's testimony because it violated Indiana Rule of Evidence 702, his argument is procedurally defaulted and will not be considered further by this court.

Ineffective Assistance of Trial Counsel Claims

Whitelow's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 575 U.S. 312, 315 (2015) (quotation marks and citations omitted).

To prevail on an ineffective assistance of counsel claim in the State courts, Whitelow had to show that counsel's performance was deficient, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that

standard." *Id.* (*citing Youngblood v. Alvarado*, 541 U.S. 652, 664 (2004)). This creates a

"doubly deferential" standard of review here. *Id.* "Given this high standard, even

'egregious' failures of counsel do not always warrant relief." *McNary,* 708 F.3d at 914.

<u>Trial Counsel's Failure to Object to DNA Testimony by Rebecca Tobey</u>

Whitelow argues that trial counsel provided ineffective assistance of counsel

when counsel did not object to the testimony of Forensic Scientist Rebecca Tobey, and

that the Indiana Court of Appeals erred in finding that counsel was not ineffective. ECF

2 at 5-6. Tobey performed DNA testing on a number of items, including a .25 automatic

weapon. *Id.* She testified that Whitelow could not be excluded as a possible contributor

of DNA found on the weapon. *Id.* According to Whitelow, Tobey used the wrong

testing procedure. *Id.* Whitelow asserts that, in reaching her conclusion, Tobey relied on

only two loci.[1] *Id.* According to Whitelow, the Federal Bureau of Investigation

procedure for inclusion in its Combined DNA Indexing System (CODIS) provides that

she should consider thirteen loci, and no less than ten loci. *Id.* Thus, Whitelow

concludes that, to be admissible, Tobey should have considered thirteen loci, and no

less than ten loci. *Id.*

The Court of Appeals considered Whitelow's argument and noted that

"Whitelow cited no authority supporting the position that DNA evidence is

---

[1] Loci is "a term used for the DNA markers that are tested and reported on … DNA Testing results." <u>https://dnatesting.com/what-are-genetic-systems-and-what-do-they-have-to-do-with-my-dna-test-results/</u> (last visited April 8, 2020).

inadmissible if it fails to meet the qualifications for inclusion to CODIS" and that his argument therefore failed. ECF 10-11 at 9. The Court of Appeals' analysis reflects a reasonable application of *Strickland*. Whitelow presented no basis for his argument that failure to meet the criteria necessary for inclusion in CODIS renders Tobey's testimony inadmissible. Thus, he did not meet his burden of showing that his counsel's performance was deficient. Furthermore, it is unclear how the testimony could have prejudiced Whitelow. Tobey did not testify that the DNA was, to a reasonable degree of scientific certainty, Whitelow's. She merely testified that he could not be excluded as a contributor. The Court of Appeals therefore did not err in rejecting Whitelow's argument that counsel was ineffective in failing to make such an objection. Thus, Whitelow cannot prevail on this ground for relief.

### Trial Counsel's Failure to Move for a Mistrial or Object to False Testimony

Whitelow argues that four witnesses presented false testimony at his trial, his counsel should have objected to or moved for a mistrial based on this false testimony, and the Indiana Court of Appeals erred when it found that his trial counsel was not ineffective on this basis. ECF 2 at 7-13. He claims Keith Berry perjured himself when he testified that he saw Whitelow shoot Lowe in the head, when he testified that he saw Whitelow with a handgun, and when he testified that he did not see anyone else with a gun on the night of the shooting. ECF 2 at 7-9. Whitelow claims that Rodreon Jones perjured herself when she testified at her deposition that Whitelow shot a silver handgun, but at trial she testified that she did not see the gun. ECF 2 at 9. Whitelow

claims that Roberto Martinez perjured himself when he testified that Whitelow shot Lowe in the head or face, when he testified that only Whitelow had a gun on the night of the shooting, and when he lied under oath in a prior proceeding. ECF 2 at 10-11. Finally, Whitelow alleges that Brandon Humphrey perjured himself when he testified at trial that he did not know about the circumstances surrounding the murder and that, although he had heard about it, he did not know that Whitelow was involved. ECF 2 at 12.

The Court of Appeals determined that Whitelow's examples of alleged "perjury" amounted to "simply instances of witness inconsistency." ECF 10-11 at 11.

> Perjury is a crime defined as making a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true, or knowingly making two or more material statements in a proceeding before a court or grand jury which are inconsistent to such a degree that one of them is necessarily false. Ind. Code § 35-44-1-2-1(a). It has long been held that the inconsistency alone is not enough to prove perjury. *Daniels v. State*, 658 N.E.2d 121, 123 (Ind. Ct. App. 1995). Furthermore, it is up to the jury to decide who is telling the truth. *See Wallace v. State*, 474 N.E.2d 1006, 1008 (Ind. 1985) (holding that State was under no duty to prevent testimony of witness who game testimony contradicting another witness or force the witness to admit that he was lying, and that resolution of inconsistencies between witness's deposition and trial testimony which were brought out on cross-examination were for the jury to resolve). The remedy for knowingly false testimony is a charge of perjury, not exclusion of the evidence.

*Whitelow v. State*, 95 N.E.3d 212 (Ind. Ct. App. Dec. 19, 2017) (table), *trans. denied* 96 N.E.3d 578 (Ind. Feb. 21, 2018) (table); ECF 10-11 at 11-12. Whitelow's allegations and the Court of Appeals' findings as to each witness are examined in detail below.

### Keith Berry

Whitelow argues that Berry testified falsely that Lowe was shot in the head when, in other testimony, he testified that he did not know if Lowe had been hit. *Id.* at 7-8 (citing Tr. at 149). Likewise, he testified both that he saw Whitelow with a small

11

black gun, and that he did not see Whitelow with a weapon. *Id.* at 8 (citing Tr. 145-46, 152-53). And, Berry testified that he did not see anyone other than Whitelow with a weapon, and that he saw the "guy in the white shirt" with a weapon and heard him say that he was going to go get his gun and shoot someone. *Id.* at 8-9 (citing Tr. 145, 154-55).

The Court of Appeals determined that Berry did not perjure himself when he testified that he saw Whitelow shoot Lowe in the head but, when counsel confronted him with his prior testimony on cross-examination, he testified that he did not actually see where Lowe was shot. ECF 10-11 at 12. On cross-examination, the following exchange occurred between Berry and Whitelow's counsel:

> Q: Now, I believe you testified that there was, at that time, one shot fired by Mr. Whitelow; is that correct?
> A: That's what I saw, yes.
> Q: And you don't know where that - - if that shot hit him or not; is that correct?
> A: I have no way of knowing that.
> Q: Okay. You testified, I think, that you thought that it hit him in the head or something like that?
> A: That would be - - what I saw - -
> Q: Isn't it true - - isn't it true previously you testified you don't even know it hit him?
> A: True.
> Q: To this day, you don't know; is that correct?
> A: Correct.

Tr. at 149.

The Court of Appeals determined that this testimony was only inconsistent and did not reflect a knowingly false statement such that it could fairly be regarded as perjury. ECF 10-11 at 13. The Court of Appeals also noted that the medical evidence admitted at trial clearly showed that Lowe was shot in the head. *Id.*

The Court of Appeals also determined that Berry did not perjure himself when he testified that he saw Whitelow with a handgun. Initially, he testified that the weapon

that Whitelow was holding "was black, very small, fit in like the palm of his hand." Tr. at 146. Later, he testified that he did not actually see the gun. "I'm sure it was too small. He was pointing in that direction. I technically never saw a gun, no." *Id.* at 152-53. The Court of Appeals concluded that Berry's testimony regarding seeing the gun may have been inconsistent, but that it was not perjury. The Court of Appeals further noted that the inconstancies in Berry's testimony had been brought to the attention of the jury through cross examination.

The Court of Appeals reached the same conclusion as to Whitelow's argument that Berry perjured himself when he testified that he did not see anyone other than Whitelow with a gun on the night of the murder. ECF 10-11 at 14. On cross-examination, Berry admitted that he heard someone involved in the parking lot conflict state that he was going to get a gun and shoot others involved in the conflict. The Court of Appeals determined that this testimony was not inconsistent with Berry's earlier testimony that he only saw Whitelow with a gun, but that, even if it was, "it would amount to little more than an inconsistency, nor perjury." *Id.*

The Court of Appeals also addressed Whitelow's claim that Berry's testimony that Whitelow was the only person with a gun was inconsistent with a prior statement he made to the police. *Id.* But, the Court of Appeals noted that Berry testified that he did not make the statement. *Id.* And, even if Berry did make the statement, the Court of Appeals concluded that the statement did not demonstrate that his trial testimony was perjured.

Rodreon Jones

Whitelow argues that Rodreon Jones also perjured herself when she falsely testified at her deposition that she saw Whitelow shoot a silver handgun but testified at trial that she did not see the gun. ECF 2 at 9; Tr. at 328-31. The Court of Appeals noted that it is unclear how Whitelow is harmed where he is alleging that Jones testified truthfully at the trial but falsely at her deposition. ECF 10-11 at 14. The Court of Appeals also determined that there was "little to no inconsistency between her testimony during the deposition and at trial." *Id.* at 15. At her deposition, Jones testified that she saw something "shiny" in Whitelow's hand and agreed with counsel's description that a portion of the gun she saw was "chrome." Tr. at 328-31. At trial, she said she "probably [saw] some shiny," but she didn't really see the gun – just fire. *Id.* She clarified that "[s]omething had to have been in his hand. You're not shooting firecrackers out in the parking lot." *Id.* at 328. The Court of Appeals categorized the testimony as "not terribly inconsistent" with her deposition testimony, because, under each version, "she saw something fire form Whitelow's hand" and saw "some portion of a metallic object." *Id.*

Roberto Martinez

Whitelow argues that Roberto Martinez perjured himself when he testified at his deposition that Whitelow shot Lowe in the chest or gut, but at trial he testified that Whitelow shot Lowe in the head or face. ECF 2 at 10; Tr. 477, 520-25. On cross-examination, Martinez testified as follows:

    Q: And you saw him pull the gun out and shoot him where?
    A: In this front part. (Indicating)
    Q: Well, you had a good vantage point; right?
    A: Right.

14

Q: Could you see if he shot him in the face, if he shot him in the chest?
A: Yeah, towards the head part.
Q: So you think he shot him in the head?
A: Right.
Q: Now, you didn't tell me before in a deposition that he shot him in the chest or the gut; you didn't say that?
A: I can't remember.

Tr. at 477-78.

At his deposition, Martinez was asked where Whitelow shot the victim and he answered by indicating that "[i]t had to be in the chest." Tr. at 523. He then stated "[y]eah, well, in the front of the body, the front body part." *Id.* He was asked how he knew and he stated, "[b]ecause I seen it. I was right there." *Id.*

He also testified at trial that only Whitelow had a gun that night, but at his deposition he testified that several people had guns that night. *Id.* at 10-11; Tr. at 440, 443, 526-28. At his deposition, Martinez testified that only Whitelow fired shots, and then he was asked if he saw anyone else with a gun. He answered as follows:

The - - one of the guys in the white shirt one of them had a gun, and then the guy in the red or the all - - one all in black, they had a gun too.

Tr. 526. However, at trial, he no longer recalled those details. Tr. 526-27. He testified further that "[s]omebody else had a gun, but [he couldn't] remember who right now." Tr. 527.

And, in one proceeding Martinez testified that "a guy who had the hair like the Judge there, moving everybody aside and shooting Mr. Lowe two or three more times right before the split," but at trial he admitted that he said this right after the shooting but he no longer had any recollection of this occurring. *Id.* at 11 (citing Tr. 492-93, 495). The Court of Appeals categorized these discrepancies as mere inconsistencies and

found that "Whitelow has presented no evidence that would have required the post-conviction court to conclude that Martinez *knowingly* lied during his testimony." ECF 10-11 at 17.

Brandon Humphrey

Whitelow argues that Brandon Humphrey perjured himself when he testified at trial that he did not know about the circumstances surrounding the murder and did not know that Whitelow was involved, but elsewhere he testified that he has cousins in the area and was made aware of the story going around. ECF 2 at 12; Tr. at 1044. The Court of Appeals considered both Humphrey's deposition testimony that he had cousins in Hammond and was "aware of the story that was going around" and Humphrey's testimony that he heard about the shooting but did not know Whitelow was involved. ECF 10-11. The Court of Appeals concluded that the two statements were not conflicting and that, "even if they were, Whitelow has provided no evidence that Humphrey's trial testimony was knowingly false." *Id.*

After considering each of the allegedly perjured statements, the Court of Appeals concluded that:

> Whitelow merely notes inconsistencies in the testimony of several witnesses. These inconsistencies were highlighted by the effective cross-examination of this very trial counsel Whitelow now claims was ineffective. But Whitelow has presented no evidence to support his claim that these witnesses knowingly provided false testimony. Because there is no evidence of perjury, Whitelow' trial counsel was not ineffective for failing to move for a mistrial based on this alleged perjury.

ECF 10-11 at 17. This court cannot conclude that, in reaching that conclusion, the Court of Appeals unreasonably applied *Strickland*. The Court of Appeals' analysis is not only reasonable, it is correct. To the extent that the testimony of any of these witnesses was

16

inconsistent with previous testimony, the only proper remedy was impeachment – a remedy trial counsel ably pursued. The record before this court provides no basis for counsel to have moved for a mistrial or otherwise object to any of the allegedly false testimony. Thus, Whitelow cannot prevail on this ground for relief.

### Trial Counsel's Failure to Impeach Witnesses

In his third and final ground for relief, Whitelow argues that his trial counsel was ineffective because he failed to impeach these same four witnesses with an autopsy report and video evidence that contradicted their testimony.

### Keith Berry, Roberto Martinez, and Brandon Humphrey

Whitelow argues that his trial counsel should have impeached the testimony of Berry, Martinez, and Humphrey that Lowe was shot in the head and/or face with an autopsy diagram that allegedly showed that Lowe was not shot in the head. ECF 2 at 14-16; Tr. at 142, 477, 1065. The Court of Appeals considered the testimony of the forensic pathologist that the autopsy revealed a gunshot entrance and exit wound on the top of Lowe's head. The Court of Appeals also considered photographs that graphically depicted the gunshot wound to Lowe's head. After considering this evidence, the Court of Appeals concluded that "[a]ttempting to impeach Berry's or Martinez's testimony by claiming that the evidence did not show that Lowe had been shot in the head would have been more than futile – it would have been foolish." ECF 10-11 at 18. As for Humphrey, the Court of Appeals noted that Humphrey did not testify that he saw Whitelow shoot Lowe – he testified only that Whitelow told him that

he shot Lowe in the face three times. The Court of Appeals concluded that "[c]onfronting Humphrey with evidence that Lowe had been shot in the head only once would not have impeached the credibility of Humphrey's testimony, as Whitelow may have simply lied to Humphrey with regard to how many times he shot Lowe." ECF 10-11 at 18-19. The Court of Appeals further noted that "the autopsy evidence simply confirms that Lowe was shot in the head. We cannot say that Whitelow's trial counsel was ineffective for failing to reiterate this fact to the jury in an attempt to impeach Humphrey's credibility." ECF 10-11 at 19.

This conclusion reflects a reasonable application of the *Strickland* standard. There was overwhelming evidence presented at trial that Lowe was shot in the head. The forensic pathologist that performed the autopsy testified that he documented entrance and exit wounds on the top of Lowe's head. Tr. 754-55. Photos admitted at trial showed bullet wounds to Lowe's head. Tr. 761, Tr. Ex. 26; Tr. Ex. 113. In light of that evidence, the Court of Appeals reasonably determined that any attempt to impeach Berry, Martinez, or Humphrey based on an autopsy report that allegedly suggested that the victim was not shot in the head would have been futile and would not have led to a different outcome for Whitelow. This is a reasonable application of *Strickland*, and the Court of Appeals' findings therefore will not be disturbed.

<u>Rodreon Jones</u>

Whitelow also argues that his trial counsel should have impeached Jones's testimony that she saw Whitelow fire a gun with videotape evidence from the parking lot that shows that Whitelow did not shoot a gun. ECF 2 at 15; Tr. 293. The Court of

18

Appeals noted that the post-conviction relief court had reviewed the camera footage and concluded that:

> The surveillance footage is of such poor definition and quality that one cannot distinguish any specific actions by individuals other than blurry images of movement. Car lights flash on and off, people walk in and out of camera view and at no point can this court see the shooting at issue within the frame of the surveillance video. Whitelow presents no evidence of whether Ms. Jones is even in the frame of the area of the parking lot which is captured in the video. As such, the CD evidence neither supports nor refutes Ms. Jones'[s] description of what occurred at McTavern's.

ECF 10-11 at 19 (quoting App. App. Vol. 2 at 30.) Because Whitelow had not explained how the video recording contradicted Jones's testimony, the Court of Appeals concluded that it was "in no position to question the post-conviction court's conclusion that Whitelow's trial counsel was not ineffective for failure to impeach Jones's testimony with this video." ECF 10-11 at 19.

Whitelow's argument before this court is as poorly developed as it was before the Court of Appeals. He still has not explained how the video contradicts Jones's testimony. Thus, this court cannot find that the Court of Appeals unreasonably applied *Strickland* when it found that Whitelow had not produced evidence suggesting that the lower court erred in concluding that trial counsel was not ineffective for not attempting to impeach Jones's testimony with surveillance video that was so poor in quality that it could not reasonably cast doubt upon Jones's testimony.

This court cannot conclude that the Court of Appeals erred when it found that Whitelow had not demonstrated that his counsel's performance was deficient. And, this court also cannot make a probabilistic determination that a reasonable jury would reach a different result if trial counsel had impeached any of these witnesses as Whitelow

suggests. *See Whitlock v. Godinez*, 51 F.3d 59, 64 (7th Cir. 1995); *Holmes v. Hardy*, 608 F.3d 963, 968 (7th Cir. 2010). Thus, Whitelow's third ground for relief lacks merit.

<u>Cumulative Error</u>

Even if the errors that Whitelow alleges are considered cumulatively, the errors do not demonstrate that his trial counsel was ineffective. "[P]rejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient." *Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008). After reviewing the record and considering Whitelow's claims of ineffective assistance, this court cannot find that the State court's determination regarding cumulative error was objectively unreasonable. The Court of Appeals noted that "[e]rrors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." ECF 10-11 at 24-25. The Court of Appeals then found that "Whitelow had not established that his trial counsel committed any errors" and that there was therefore "no errors to accumulate." ECF 10-11 at 24. This too is reasonable. This court cannot make a probabilistic determination that a reasonable jury would reach a different result if trial counsel had moved to exclude the testimony of Tobey, objected to or moved for a mistrial based on the allegedly false testimony of Berry, Jones, Martinez, and Humphrey, or attempted to impeach these same witnesses with the autopsy diagram and the video evidence from the parking lot. *See Whitlock*, 51 F.3d at 64. Based on the foregoing, cumulative error is not a basis for habeas relief here.

CERTIFICATE OF APPEALABILITY

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, each of Whitelow's claims is either procedurally defaulted or lacking in merit. Whitelow has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court declines to issue Whitelow a certificate of appealability.

CONCLUSION

For the reasons set forth above, the court DENIES the petition (ECF 2) and DENIES the petitioner a certificate of appealability.

SO ORDERED on April 21, 2020

_____/s/ JON E. DEGUILIO_____
JUDGE
UNITED STATES DISTRICT COURT